IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RUBMARIE VALENTIN LUGO; HERNAN OTERO AND THEIR LEGAL CONJUGAL PARTNERSHIP<br><br>Plaintiffs<br><br>vs.<br><br>DOCTORS CENTER HOSPITAL BAYAMON; ABC INSURANCE COMPANY; DR HECTOR RIVERA RIVERA; MARY DOE AND THEIR LEGAL CONYUGAL PARTNERSHIP; EFG INSURANCE COMPANY; EMERGENCY GROUP INC; XYZ INSURANCE CO.; DR. JOHN DOE; JANE DOE AND THEIR LEGAL CONYUGAL PARTNERSHIP; XYZ INSURANCE COMPANY; | CIVIL NO.<br><br><br><br><br>EMTALA, 42 U.S.C.A 13995dd<br>MEDICAL MALPRACTICE |

## COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW plaintiffs represented by the undersigned counsel and respectfully before this Honorable Court allege, stay and pray:

### JURISDICTION

1. The jurisdiction of this Honorable Court is invoked under 28 U.S.C.A section 1331 since the facts prompting this complaint refer to a federal question under the Emergency Medical Treatment and Active Labor Act (EMTALA) 42 U.S.C.A section 1395dd. Supplemental jurisdiction is also invoked under 28 U.S.C. A section 1367(a) as

to the other claims also set forth in this complaint which form part of this case and controversy and which are actionable under Article 1802, and Article 1803 et seq., of the Civil Code of Puerto Rico, 31 L.P.R.A section 5141 et seq.

2. The plaintiffs demand trial by jury.

## THE PARTIES

3. Plaintiffs Rubmarie Valentín Lugo and Hernan Otero are both of legal age and married. They reside in Manatí, Puerto Rico and are the plaintiffs in this matter.

4. Doctor's Center Bayamón (from now Hospital) at all relevant times is a private medical institution authorized under the laws of the Commonwealth of Puerto Rico to provide medical services with facilities in Bayamón, Puerto Rico, and a participating hospital with an emergency department as defined and regulated by EMTALA. The Hospital is responsible to plaintiffs for the violations of EMTALA , and for the negligent acts or omissions of its agents, employees, personnel, and contractors or subcontractors inasmuch they resulted in the damages for which plaintiffs herein claim.

5. At the time of the events prompting this complaint the Hospital was insured against the medical malpractice acts or omissions of those physicians acting under its patronage and/or their agents, employees, personnel, and contractors or subcontractors by ABC Insurance Company . This insurance company is denominated by a fictitious name once its real name is currently unknown but will be correctly denominated upon learning it. This insurance company is jointly and severally liable to

plaintiffs for the negligent medical acts or omissions incurred by the Hospital in this case.

6. Doctor Hector Rivera Rivera (from now on Dr. Rivera) is a physician authorized under the laws of the Commonwealth of Puerto Rico to practice medical profession in this jurisdiction. Dr. Rivera was the physician who received and treated Nagelly at the emergency room of the Hospital on March 24, 2007. Doctor Muns at all relevant times was an employee, agent, contractor or subcontractor rendering medical emergency services at the Hospital and under its auspices.

7. At the time of the events prompting this complaint Dr. Rivera was insured by EFG Insurance Company with an insurance policy to cover the negligent medical acts or omissions incurred by her. EFG Insurance Company is denominated by a fictitious name once its real name is currently unknown but will be correctly denominated upon learning it. EFG Insurance Company is legally bound and jointly and severally liable to plaintiff, by virtue of the policy issued on Dr. Rivera behalf, and to compensate plaintiffs for his negligent acts and omissions.

8. At the time of the events prompting this complaint Dr. Rivera was married to Mary Doe and together they form a Conjugal Partnership which received a financial or economic gain from Dr. Rivera medical practice. Dr. Rivera spouse is herein denominated by a fictitious name once its real name is currently unknown but it will be correctly denominated upon learning it. Both Mary Doe and the Conjugal Partnership formed by him and Dr. Rivera are jointly and severally liable and responsible to

plaintiff for the acts or omissions contrary to the mandate of EMTALA, and of those amounting to medical malpractice incurred by Dr. Rivera in this case.

9. Emergency Group Inc. (from now on Emergency Group) is a Medical Group which was contracted by the Hospital to operate its emergency room and/or to which Dr. Muns was an agent, member, contractor or subcontractor or to which she belongs or was related in any other legal capacity. Emergency Group received a financial or economic gain from the Hospital and/other sources for the operation of the Hospital's emergency room and/or for the medical practice of Dr. Rivera with the Group at the time of the events for which this complaint is filed. The Emergency Group is also jointly and severally liable to plaintiffs for the negligent acts or omissions incurred while Nagelly was present at the emergency room and for those incurred by Dr. Rivera in this case.

10. At the time of the events prompting this complaint Emergency Group was insured against the medical malpractice acts or omissions of those physicians acting under its patronage such as Dr. Rivera by XYZ Insurance Company. This insurance company is denominated by a fictious name once its real name is currently unknown but will be correctly denominated upon learning it. This insurance company is jointly and severally liable to plaintiffs for the negligent medical acts or omissions incurred by Dr. Rivera in this case.

11. Dr.John Doe, Jane Doe and their Legal Conyugal Partnership and XYZ Insurance Company are those other persons, natural or legal, which could be

responsible to the plaintiffs for the acts or omissions subsequently described herein and whose real names are currently unknown at this time, but which are jointly and severally liable to plaintiffs in this case.

## THE FACTS

12. On December 27, 2011, around noon, Plaintiff, Rubmarie Valentín, with approximately 36 weeks pregnancy developed sudden onset abdominal and pelvic pain, while on her lunch break working at Bayamón Doctor's Center Hospital.

13. She was transfered to the same Hospital emergency room, where she was assisted at 1:09 p.m and the vital signs were obtained and recorded, no fetal heart rate was recorded. The impression diagnosis was back pain, pelvic pain and renal colic. The medical orders were CBC, U/A, PT, PTT, CMP and renal sonogram (even though the record does not show these orders). The orders were taken at 1:15 p.m

14. The test results were available between 2:47 p.m and 3:18 p.m, with normal results, the renal sonogram was interpreted as moderate right hydronephrosis.

15. After the Physician notes at 1:09 p.m., there are no further Physicians progress notes or Nurse's notes, niether consultation or any other information, that could reveal Plaintiff's condition after said time. *Even though Plaintiff was complaining of severe pelvic pain.*

16. Since Mrs. Valentín OB/GYN, Dr. Jorge Otero Quintana was at Manatí, where at Plaintiff resides and was treated her pregnancy, arrangement for her transfer

to Manatí started si the pain began around 1:00 p.m, but the transfer was not perform aproximately until 7:00 p.m. to 7:15 p.m. by then Plaintiff claim was suffering from severe pelvic pain and was in active labor.

17. The Certified Copy Record from the Doctor's Center Hospital in Bayamón *does not have any Transfer Note, nor a wrtitten explanation about the decision making process, the risks and benefits of the transfer at that moment or any other information.*

18. Plaintiff was received at Doctor's Center Hospital emergency department in Manatí, at 8:15 p.m. The nurse obtained and recorded the vital signs: BP 60/30, , P 152, R 20, T 36, and **fetal heart rate 0**. The chief complaint recorded by the nurse was: "35 weeks pregnant patient had contrations, and was pale, diaphoretic and restless.Was categorized as an emergency and referred immediatley to the emergency physician, with a diagnosis of pelvic pain.

19. Plaintiff was subsequently evaluated by the Emergency room physician and recorded the obstetric history and the date of confinement, which was January 11th, 2012. The Physical examination was recorded as tachycardia without respiratory distress; the abdomen was gravid with tenderness to palpation. The fetal heart frequency cannot be obtained, even with a Doppler device.

20. The impression diagnosis was pelvic pain and rule out abruptio placentae. The ER Physician called Plaintiff OB/GYN, who advised to bring the patient immediately for evaluation. At 9:00 p.m. the nurse recorded that no fetal heart rate was obtained with the fetal monitor and there was vaginal bleeding. At 9:20 p.m. Dr. Otero, her

OB/GYN, ordered to prepare the patient for the operating room with a presumptive diagnosis of abruptio placentae for an emergency exploratory laparatomy.

21. An exploratory, under general anesthesia, was done and a rupture uterus by a previous cesarean section scar and intra uterus death fetus was found.

22. While at Doctor's Center Hospital in Manatí, Plaintiff became hypovolemic due to an hemorrhagic shock and a central line (yugular) was placed to administer replacement IV fluids, blood, blood products and medication. She also underwent endotracheal intubation and mechanical ventilator assistance and was transferred in critical condition to the intensive care unit.

23. Plaintiff, also developed serious complications as anemia, hypovolemic shock, respiratory acidosis, adynamic ileus with abdominal distension that requiered nasogastric tube for decompression, disseminated intravascular coagulopathy and respiratory insufficiency with pleural effusions.

24. On December 30th, 2011, Plaintiff was transferred to the General Medicine Ward and finally was discharged on January 3rd, 2012.

25. After been discharged, Palintiff became aware her sudden neurologic deficit in taste and in her sense of smell. For that condition she is currentley treated by Neurologist, Dr. Gian Carlo Gierbolini.

## EMTALA VIOLATIONS

26. The Hospital's emergency room, received a pregnant patient with abdominal/pelvic pain on her 3rd trimester of pregnancy. The ER did not fulfill its statutory duty under EMATALA, failing to perform an appropriate screening the emergency condition, since among many others, a complete medical history of the present illnes and a complete comprehensive physical examination was not performed. The ER Physician failed to ask about vaginal bleeding associated symptoms, to consider two of the most threatening complications during the 3rd trimester of pregnancy; abruptio placentae and placenta previa.

27. Under EMTALA the term "emergency medical condition" means:

(A) a medical condition manifesting itself by the acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in:

1. placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious condition.

2. serious impairment to bodily functions

(B) With brespect to a pregnant women who is having contrations

1. that there is inadequate time to effect a safe transfer to another hospital before delivery, or

2. that transfer may pose a threat to the health or safety of the woman or the unborn child.

Defendant failed to identify the emergency medical condition, and placed the health of Plaintiff and her unborn child in serious condition, moreover that failure caused the death of the baby.

The Hospital Defendant failed to comply with EMTALA performing an inadequate transfer, since Plaintiff was having contractions and the transfer was threat and caused harm to Mrs. Valentín health and the death of her unborn child.

28. Under EMTALA the term "to stabilize" means, with respect to an emergency medical condition described in the above paragraph, to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition with respect to pregnant women, to deliver (including placenta).

The Hospital failed to comply with EMTALA aftyer failing to stabilize, since their incompliance resulted in a material deterioration of the condition during the transfer. There was a reasonable medical probaility that this might occurred, since the transfer was perform without any notes or documentation regarding the condition of Plaintiff at the moment of the transfer, moreover after she was complainig of severe pelvic and abdominal pain.

29. The ER did not Rule out or perform any screening to determine if Plaintiff was in active labor during the time she was at the ER at Doctor's Center Hospital in

Bayamón. Defendant also, failed to stabilize Plaintiff emergency medical condition, as established in EMTALA.

30. The Hospital's emergency room, did not fulfill its statutory duty under EMATALA, considering Plaintiff was in Active Labor, the ER did not use all available ancillary resources during the process of determining the emergency medical condition. During the time she was at Hospital ER no pelvic sonogram was ordered, in order to perform an appropiate screening. The Hospital, failed to follow their own ER protocols for cases like the one of Plaintiff.

31. Moreover, the Hospital's emergency room, did not fulfill its statutory duty under EMATALA, by failing to stabilize Plaintiff emergency condition and performing an inappropriate transfer.

32. An appropriate transfer under EMTALA, is a tranfer in which the transferring hospital sends to the receiving facility all medical records (or copies thereof), related to the emergency condition for which the individual has presented, available at the time of the transfer. Also, in which the transfer is effected through qualified personnel and transportation equipment.

The certified medical records from the receiving hospital does not have any record or copy from the the transferring hospital. In addition, there is no record or copy in neither, the transferring hospital or the receiving hospital, from the Ambulance Paramedics regarding Plaintiff condiiton before and during the transfer.

## 1802 & 1803 VIOLATIONS

25. Doctor Rivera departed from the best medical practice while treating Mrs.Valentín in as much failed to properly evaluate and diagnose Plaintiff's emergency medical condition and symptoms, and failed to consult with any specialist.. In addition, Dr. Rivera's negligence created a health complications that put Mrs.Valentín life in jeopardy and her unborn child death. A cause of action against Dr. Rivera is actionable under Article 1802 of the Puerto Rico Civil Code, 31 LPRA sections 5141 and 5142, and this Honorable Court can exercise its supplemental jurisdiction over it.

26. Defendant Physicinas and the Hospital were negligent after failing to follow up and give any treatment to Plaintiff, after Physicians evaluated Plaintiif at 1:09 p.m, orders were taken at 1:15 p.m, then between 2:47 p.m and 3:18 the test reports were availbale. Defendants Physicians failed to give any further treatment or perform any additional test the rest of the time she was at the ER, eventhough Plaintiiff was complaining of severe pelvic and abdominal pain. Not even, sending Mrs. Valentín to Labor Room for Electronic Fetal Monitoring to trace the fetal heart rate or frequency of her unborn child.

27. The Emergency Group. at all relevant times controlled and operated the Hospital's emergency room, and/or recruited and supervised Dr. Rivera While doing so the Emergency Group obtained a financial benefit from the emergency room operation and/or from the medical practice of Dr. Rivera and as such is vicariously liable for Dr. Rivera acts and omissions amounting to medical negligence. The Emergency Group

failed in supervising Dr. Rivera medical practice and the Hospital's emergency room operation at the time of the events prompting this complaint. The cause of action against the Emergency Group is actionable under Article 1803 of the Puerto Rico Civil Code, 31 LPRA section 5142 for which this Honorable Court can also exercise its supplemental jurisdiction.

28. Doctor John Doe, is another physician who departed from the best medical practice, while treating, Mrs. Valentín, or that participated in her negligent medical treatment aforestated. A cause of action against Dr. John Doe is actionable under Article 1802 of the Puerto Rico Civil Code, 31 LPRA sections 5141 and 5142, and this Honorable Court can exercise its supplemental jurisdiction over it.

29. The Hospital is also vicariously liable for the negligent acts or omissions of Dr. Rivera, the Emergency Group, or of any other personnel, nurses, technicians, or employees involved in Mrs.Valentín medical treatment per the local law of torts. The Hospital received a financial gain from their medical practice, operations and duty performance, and was therefore obligated to supervise and to monitor said personnel, nurses, technicians, employees, agents, contractors, or subcontractors. This Honorable Court can also exercise its supplemental jurisdiction over plaintiffs claims against the Hospital.

30. The Hospital is also vicariously liable for the negligent acts or omissions of Dr. John Doe in Mrs. Valentín medical treatment per the local law of torts. The Hospital received a financial gain from their medical practice, operations and duty performance,

and was therefore obligated to supervise and to monitor said employees, agents, contractors, or subcontractors. This Honorable Court can also exercise its supplemental jurisdiction over plaintiffs claims against the Hospital.

31. This Honorable Court may also exercise its supplemental jurisdiction over plaintiffs claims against the insurance companies of all co defendants. These companies are authorized to conduct business in the Commonwealth of Puerto Rico and are legally liable by virtue of the insurance policies issued on behalf of all co defendants.

## DAMAGES

32. As a result of the EMTALA violations, and of the negligent acts and omissions of defendants, under Articles 1802 and 1803 of the Puerto Rico Civil Code, which prompted the death of Plaintiffs baby boy.

33. Mrs. Valentín suffered great pain during all the time she was not treated appropriately, as a matter of fact she almost die at Doctor's Center Hospital in Manatí, was at intensive care unit. These damages should be compensated in no less than one million dollars $1,000,000.00.

34. Mrs. Valentín, as result of the EMTALA violations, and of the negligent acts and omissions of defendants, under Articles 1802 and 1803, supra, developed a neurologic deficit in taste and in her sense of smell. These damages should be compensated in no less than one million dollars $1,000,000.00.

35. Plaintiffs damages, prompted by defendant's deviations from the mandate of EMTALA and Articles 1802 and 1803 cause Plaintiffs, Mrs. Rubmarie Valentín and Mr. Hernán Otero, severe mental anguishes. Plaintiffs claims a compensation of no less than three million dollars $3,000,000.00 for these damages.

36. All of the above named defendants, including their Conjugal Partnership, and those mentioned in paragraph fourteen herein, are jointly and severally liable to plaintiff for the actions and/or omissions for which this complaint is filed.

**WHEREFORE:** It is respectfully requested from this Honorable Court to enter judgment on plaintiff's behalf and against defendant, who are jointly and severally liable to plaintiff in no less than the amounts above mentioned, plus cost and attorneys fees.

**I HEREBY CERTIFY**, that on 10th September, 2012, I electronically filed the foregoing complaint with the Clerk of the Court using the CM/ECF system.

In Ponce, Puerto Rico this 13th day of September, 2012.

**CRUZ PEREZ & RIVERA SEDA**

By:   S/ARNALDO RIVERA SEDA
**ARNALDO RIVERA SEDA**
**USDC-PR NO. 213808**
La Rambla Plaza, Suite 211
606 Ave. Tito Castro
Ponce, Puerto Rico 00716-0210
Tel. (787) 812-5600
Fax (787) 841-0200
riveraseda@gmail.com